[Cite as *In re J.L.*, 2026-Ohio-576.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: J.L. | Case No. 2025 CA 00136 |
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Court of Common Pleas, Family Court Division,Case No.2024JCV01163 |
| | Judgment:   Affirmed |
| | Date of Judgment Entry: February 19, 2026 |

**BEFORE:** Andrew J. King; Kevin W, Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** RICHARD D. HIXSON, for Defendant-Appellant; JAMES B. PHILLIPS, for Plaintiff-Appellee.

*King, P.J.*

{¶ 1}   Appellant B.C. (Mother) appeals the September 10, 2025 judgment of the Stark County Court of Common Pleas Family Court which terminated her parental rights and granted permanent custody of minor child J.L to the Stark County Department of Job and Family Services (SCJFS). We affirm the trial court.

**Facts and Procedural History**

{¶ 2}   Mother gave birth to J.L. on September 29, 2024 while incarcerated. On October 1, 2024, SCJFS filed a permanent custody complaint alleging dependency of J.L. and requesting J.L. be placed into the emergency custody of SCJFS. The following day, the trial court granted SCJFS temporary custody of the child. J.L. was placed with the same foster family that had adopted her three-year-old half-sibling.

{¶ 3}   The trial court reviewed the case every six months and found SCJFS had made reasonable efforts to prevent continued removal.

{¶ 4}   On May 29, 2025, SCJFS filed a motion for permanent custody.

{¶ 5}   On September 9, 2025, the trial court heard testimony on the motion for permanent custody. At the time of the hearing, Mother was incarcerated for child endangering involving J.L's half-sister, and appeared via video.

{¶ 6}   Because Mother was incarcerated, no case plan was developed for her. As of the date of the hearing, Mother's earliest release date was November, 2026. Mother testified that even if she were released at that time, her release would be into a halfway house. Mother further confirmed she had not seen J.L. since she was born, and could not articulate what was in J.L.'s best interest. She did state she would like J.L. and her father to reunify, however, Father is also incarcerated and further, had never met J.L.

{¶ 7}   SCJFS caseworker Thomas testified J.L. had no bond with Mother as her foster parents are the only parents she has known. Thomas indicated that due to Mother's previous child endangering charges she would have an extensive case plan to complete and based on her anticipated release date, would not have time to complete that plan. Thomas further advised the trial court that J.L.'s foster parents wished to adopt her if the trial court granted SCJFS permanent custody.

{¶ 8}   After taking the matter under advisement, on September 10, 2025 the trial court granted the motion for permanent custody to SCJFS and terminated Mother's parental rights. The trial court found Mother had abandoned J.L. and had previously been convicted of child endangering pursuant to R.C. 2919.22(A) for abusing J.L.'s sibling.

{¶ 9}   Mother appealed and the matter is now before this court for consideration. She raises one assignment of error as follows:

I

{¶ 10}  "THE TRIAL COURT ERRED WHEN IT FOUND PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN." (sic)

{¶ 11} In her sole assignment of error, Mother argues the trial court erred in concluding permanent custody was in J.L.'s best interest.  We disagree.

## Applicable Law

{¶ 12}  As an initial matter, Mother asserts that an abuse of discretion standard applies when reviewing whether clear and convincing evidence supports a trial court's permanent custody judgment. However, in *In re Z.C.*, 2023-Ohio-4703, ¶ 18, the Supreme Court of Ohio stated:

> [T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties.

## Sufficiency of the Evidence

{¶ 13}  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *In re: Z.C.*, 173 Ohio St. 3d 359, 2023-Ohio-4703, ¶13, 230 N.E.3d 1123. "When

applying a sufficiency-of-the-evidence standard, a court of appeals should affirm a trial court when 'the evidence is legally sufficient to support the jury verdict as a matter of law.' " *Bryan-Wollman v. Domonko*, 115 Ohio St. 3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶ 3, quoting *Thompkins* at 386, 678 N.E.2d 541, quoting Black's at 1433. *Id*.

{¶ 14}  Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See *In re Adoption of Holcomb*, 18 Ohio St. 3d 361(1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477. Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997).

Manifest Weight

{¶ 15}  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App. 3d 172, 175 (1st Dist.1983). In *Thompkins*, supra, at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of *the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find *the greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." [Emphasis sic.]

{¶ 16} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179. Additionally, "'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Seasons Coal Co.,* 10 Ohio St. 3d 77, 80, (1984), quoting *C.E. Morris Co. v. Foley Construction Co*., 54 Ohio St. 2d 279, 280-281 (1978).

### Permanent Custody

{¶ 17} R.C. 2151.414(B)(1) states in relevant part that permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply: ... (b) The child is abandoned....

{¶ 18} R.C. 2151.414(B) therefore provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial

court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 19} R.C. 2151.414(D) governs "best interests" and states:

(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 20} R.C. 2151.414(E) lists factors for a trial court to consider by clear and convincing evidence in its determination whether a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. That section states in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

. . .

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 . . .of the Revised Code, and the child or a sibling of the child was a victim of the offense, . . .and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

. . .

(10) The parent has abandoned the child.

## Mother's Argument

{¶ 21}     Mother does not challenge the trial court's finding of abandonment nor the impact of her prior conviction. Rather, she argues granting permanent custody to SCJFS was not in J.L.'s best interest. She argues J.L. should instead stay in her current kinship placement in legal custody while preserving Mother's parental rights. Mother's argument appears to be that J.L. is placed with adult family members, however, this is a misunderstanding of the record.

{¶ 22} First, as Mother argues, R.C. 2151.412(H)(2) suggests that if a parent has abandoned a child, that child should be placed in the legal custody of a suitable member of the child's extended family. However, during the permanent custody hearing, SCJFS caseworker Thompson explained that J.L.'s placement is considered a kinship placement because she has been placed with the same foster parents that adopted J.L.'s three-year-old half-sister, not because there is an adult family member willing to take legal custody

of J.L. T. 26, 28. Mother also acknowledges that the language of R.C. 2151.412(H)(2) is not mandatory. See *In re D.B.*, 2024-Ohio-1872 (5th Dist.) ¶ 73.

{¶ 23} Next, the record otherwise contains sufficient competent evidence to support the trial court's decision. R.C. 2151.011(C) provides that "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Not only did Mother abandon J.L. by virtue of her incarceration, her first possible release date is not until November 2026, which would take this matter well past its sunset date. T. 7.

{¶ 24} Finally, Mother's incarceration stems from a conviction for felony child endangering involving the physical abuse of J.L.'s half-sister. In that matter, the child sustained multiple broken bones and bruising over her entire body. T. 10, Complaint, October 1, 2024. This in conjunction with a finding of abandonment more than adequately supports the trial court's decision. Accordingly, we find sufficient, competent and credible evidence in the record to support the trial court's findings by clear and convincing evidence, and find the trial court did not err in determining J.L. cannot and should not be placed with Mother and the best interests of J.L. were best served by terminating the parental rights of Mother and granting permanent custody to SCJFS.

{¶ 25} The sole assignment of error is overruled.

{¶ 26} For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas Family Court Division is affirmed.

{¶ 27} Costs to Appellant.

By: King, P.J.

Popham, J. and

Gormley, J. concur.